AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

United States of America

v.

**CHRISTIAN D. JOHNSON**

Case No. 21-mj-1054

*Defendant*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about April 16, 2020, and on or about May 21, 2020, in the County of Erie, in the Western District of New York and elsewhere, the defendant, CHRISTIAN D. JOHNSON, did knowingly, willfully, and unlawfully execute, or attempt to execute, a scheme or artifice to defraud a financial institution, or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, Bank 1 and Bank 2, by means of false or fraudulent pretenses, representations, or promises.

**All in violation of Title 18, United States Code, Section 1344.**

Between on or about April 16, 2020, and on or about May 27, 2020, in the County of Erie, in the Western District of New York and elsewhere, the defendant, CHRISTIAN D. JOHNSON, having devised a scheme or artifice to defraud Lender 1, Financial Services Company 1, Financial Services Company 2, and Financial Services Company 3, or for obtaining money or property of Lender 1, Financial Services Company 1, Financial Services Company 2, and Financial Services Company 3, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did transmit, and did cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds.

**All in violation of Title 18, United States Code, Section 1343.**

Between on or about April 16, 2020, and on or about May 21, 2020, in the County of Erie, in the Western District of New York and elsewhere, the defendant, CHRISTIAN D. JOHNSON, did knowingly make a false statement or report to Bank 1 and Bank 2, upon an application or loan, for the purpose of influencing in any way the action of Bank 1 and Bank 2.

**All in violation of Title 18, United States Code, Section 1014.**

This Criminal Complaint is based on these facts:

☒  Continued on the attached sheet.

_____
*Complainant's signature*

JEFF G. THOMSON
SPECIAL AGENT
FEDERAL DEPOSIT INSURANCE CORPORATION
*Printed name and title*

Sworn to telephonically.

_____
*Judge's signature*

Date:  _January 29___, 2021_

City and State:  _Buffalo, New York___

HONORABLE JEREMIAH J. McCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

2

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A COMPLAINT

I, Jeff G. Thomson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit in support of a criminal complaint establishing probable cause for the arrest of CHRISTIAN D. JOHNSON for committing the following offenses, in the Western District of New York and elsewhere, between in or around April 2020 and May 2020:

    a.  18 U.S.C. § 1014, False Statements to a Financial Institution;

    b.  18 U.S.C. § 1343, Wire Fraud; and

    c.  18 U.S.C. § 1344, Bank Fraud.

2.      As described below, there is probable cause to believe that JOHNSON committed the above-listed offenses in connection with a bank and wire fraud scheme targeting the Paycheck Protection Program ("PPP"), a program created to address the economic fallout of the COVID-19 pandemic by providing forgivable loans to small businesses.

## AGENT BACKGROUND

3.      I am a Special Agent with the Federal Deposit Insurance Corporation, Office of Inspector General, New York Field Office, where I have been employed since May 2020.  My current duties include the investigation of financial crimes including wire and bank fraud, money laundering, and identity fraud, as well as other financial crimes.  From July 2007 to May 2020, I was employed as a Special Agent with Immigration and Customs Enforcement, Homeland Security Investigations in the Newark, New Jersey, Field Office.  Throughout the course of my career, I have conducted and assisted in hundreds of investigations involving criminal tax, money laundering, and bank fraud schemes, and many other illegal schemes impacting individuals, partnerships, corporations, and financial institutions.  I have extensive experience conducting

search, seizure, and arrest warrant operations. I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. Recently, I have been assigned to work with the U.S. Department of Justice ("DOJ") and other law enforcement partners to investigate possible fraud associated with the stimulus and economic assistance programs created by the federal government in response to the COVID-19 program.

4.      The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; my review of documents, computer records, and other information related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause for issuance of the requested complaint and arrest warrant for JOHNSON, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## OVERVIEW OF PAYCHECK PROTECTION PROGRAM

5.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP. In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

2

6.     In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

7.     A PPP loan application must be processed by a participating lender.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration ("SBA").  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

8.     PPP loan proceeds must be used by the business on certain permissible expenses— payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

3

## OVERVIEW OF THE SCHEME AND IDENTIFICATION OF RELEVANT PARTIES

### *Overview of the Scheme*

9.     JOHNSON transmitted multiple materially fraudulent PPP loan applications, along with fraudulent supporting documentation and other false statements, to lenders in a scheme to illegally obtain PPP funds.

### *Background of JOHNSON and Relevant Individuals and Entities*

10.     JOHNSON resides in or around Buffalo, New York, and purports to be the owner of Million Man LLC ("Million Man"). JOHNSON's New York identification card lists an address in Buffalo, New York, that I confirmed (including through an in-person visit) to be his parents' residence. JOHNSON recently has lived at a second address in Amherst, New York, along with his brother (the "JOHNSON Residence").

11.     Million Man is a New York limited liability company formed on or about May 21, 2019. Million Man was issued an Employer Identification Number ("EIN") by the IRS on or about June 18, 2019, but has no discernable business operations and the IRS has no record of tax filings on behalf of the company.

12.     Bank 1 is a federally insured financial institution located in Hinton, Oklahoma, that participates as a lender in the SBA's PPP loan program.

13.     Bank 2 is a federally insured financial institution based in Salt Lake City, Utah, that participates as a lender in the SBA's PPP loan program.

14.     Bank 3 is a federally insured financial institution based in Providence, Rhode Island, with a branch office in Buffalo, New York, that purportedly maintained an account on behalf of Million Man.

4

15.     Lender 1 is an independent finance provider for small businesses based in New York, New York, that participated as a lender in the SBA's PPP loan program.

16.     Financial Services Company 1, based in Troy, Michigan, is a small-business funding provider that participated in the SBA's PPP loan program.

17.     Financial Services Company 2, based in Lehi, Utah, is a remote small-business solutions company that served as an intermediary to connect applicants with at least one lender that participated in the PPP program.

18.     Financial Services Company 3, based in Lehi, Utah, is an internet-focused company that allows potential borrowers to submit loan applications to its partner banks in various locations throughout the United States.  Bank 1 received Million Man PPP loan applications through Financial Services Company 3.

19.     Credit Union 1 is a federal credit union located in Buffalo, New York, at which JOHNSON maintained a personal bank account in 2020.

**PROBABLE CAUSE**

20.     The investigation has identified eight PPP applications all submitted in the name of JOHNSON and all for the same company, Million Man.  Despite being for the same company, the PPP applications made different representations about, among other things: (1) the number of employees; and (2) the average monthly payroll.  The following chart summarizes these different applications, which are described in further detail later in this affidavit:

| Receiving Entity | Approximate Date of Application(s) | Requested PPP Loan Amount | Purported # of Employees | Purported Avg. Monthly Payroll |
|---|---|---|---|---|
| Bank 1 | 4/16/2020 and 4/20/2020 | $300,000 | 50 | $120,000 |
| Financial Services Company 1 | 5/04/2020* | $300,000 | 54 | $278,000 |
| Financial Services Company 2 | 5/05/2020* | $690,000 | 54 | $278,000 |
| Bank 2 | 5/10/2020 | $374,625 | 54 | $149,850 |
| Lender 1 | 5/24/2020 | $695,000 | 54 | $278,000 |
| Financial Services Company 3 | 5/25/2020* and 5/27/2020* | $695,000 | 54 | $278,000 |

* These are the dates reflected on the face of the applications. Law enforcement learned of the loan applications to Financial Services Companies 1 and 2 while executing a search warrant on Gmail Address 2, however it is unclear whether the applications were ever routed to or received by a bank or PPP lender. Similarly, the government does not have information whether the loan applications submitted to Financial Services Company 3 in May 2020 were ever routed to or received by a bank or PPP lender.

21.     In total, JOHNSON submitted loan applications for more than $3.05 million in PPP loans. While no funds were ever disbursed to JOHNSON, at least three of the applications were evaluated by PPP lenders and reached the SBA (Bank 1, Bank 2, and Lender 1).

*Million Man PPP Loan Applications to Bank 1*

22.     Records obtained from Bank 1 show that Bank 1 received two applications, each bearing JOHNSON's electronic signature and seeking PPP loan funds on behalf of Million Man: (1) an SBA Form 2483 (this the PPP program's borrower application form, which is required to apply to for a PPP loan from the SBA) submitted on or about April 16, 2020 and (2) an SBA Form

6

2483 submitted on or about April 20, 2020 (together, the "Bank 1 Applications"). The Bank 1 Applications were routed to Bank 1 through Financial Services Company 3.

23.     Both Bank 1 Applications sought a PPP loan in the amount of $300,000. To support a PPP loan in the amount of $300,000, the Bank 1 Applications represented that Million Man had an average monthly payroll of $120,000 and 50 employees.

24.     Bank 1 also provided IP addresses associated with the Bank 1 Applications, including the IP address from which one PPP application was digitally signed on or about April 16, 2020. Service provider records show that the IP address captured on or about April 16, 2020, was associated with the JOHNSON Residence.

25.     The Bank 1 Applications identified JOHNSON as the "Primary Contact" for Million Man and listed a contact telephone number and a Google email address ("Gmail Address 1"). Service provider records show that Gmail Address 1 was accessed in April and May 2020 from an IP address registered to the JOHNSON Residence. Service provider records identify JOHNSON's father as the subscriber for the contact telephone number that was provided.

26.     According to records provided by Bank 1, JOHNSON submitted documents in connection with the Bank 1 Applications concerning the incorporation of Million Man. Specifically, JOHNSON provided "Articles of Organization" documentation and an online filing receipt from the New York Department of State showing a filing date of on or about May 21, 2019, for Million Man. JOHNSON also submitted color photocopies of both the front and back of his New York identification card, listing his parents' home address in Buffalo, New York. The New York identification card in the photocopies submitted to Bank 1 matches the information, ID photograph, and other records for JOHNSON currently on file with the New York Department of Motor Vehicles, indicating that the applicant possessed JOHNSON's real state-issued ID.

7

27.     As part of the Bank 1 Applications, JOHNSON submitted a purported IRS Form 941, Employer's Quarterly Federal Tax Return, for Million Man (listing the company's EIN) for all four quarters in 2019.  The first-quarter Form 941 lists 39 employees and $404,485.59 in employee wages.  The second-quarter Form 941 lists 39 employees and $378,937.49 in employee wages.  The third-quarter Form 941 lists 54 employees and $453,987.77 in employee wages.  The fourth-quarter Form 941 lists 54 employees and $403,753.40 in employee wages.  JOHNSON also submitted a purported IRS Form 940, Employer's Annual Federal Unemployment Tax Return, for Million Man (listing the company's EIN) for 2019.  The Form 940 is dated January 13, 2020, and contains address information for Million Man, but the designated spaces for entering wages and unemployment taxes are blank.  The signature boxes in the IRS Form 940 and 941 documentation contain "Christian Johnson" in typeface (*i.e.*, it does not contain handwritten signatures).

28.     According to online sources, New York Department of State records show a May 21, 2019 incorporation date for Million Man.  Notwithstanding the submission of purported Form 940 and 941s in connection with the Bank 1 Applications, IRS records indicate that no Form 940 or 941 was filed for 2019 under the EIN assigned to Million Man.

29.     The U.S. Department of Labor Office of Inspector General ("DOL-OIG") assisted in this matter by investigating records for Million Man maintained by the state agencies in New York to which companies operating in New York must report wage information.  DOL-OIG indicated that there is no reported wage data for Million Man for calendar year 2019.  This is further evidence that the IRS Form 940 and 941 documentation submitted with the Bank 1 Applications is fraudulent.

30.     Based on service provider records, on or about April 10, 2020, the user associated with Gmail Address 1, who I believe to be JOHNSON, ran the following Google search: "IRS

8

Form 944" and "IRS Form W-3" and "IRS Form 941 from Q1 2020[.]"  On or about April 14, 2020, the same user visited a website entitled "How to Create a Payroll Register - The Balance Small Business[.]"  This internet activity occurred mere days before JOHNSON submitted the first Bank 1 Application, and further supports the conclusion that JOHNSON submitted fraudulent documents in support of his PPP application.

31.     The day before JOHNSON submitted the first Bank 1 Application, on or about April 19, 2020, the user associated with Gmail Address 1 ran the following Google search: "porsche lease[.]"

### Email Communications Between Bank 1 and JOHNSON

32.     Email records provided by Bank 1 include e-mail exchanges on or about May 1, 2020, between a Bank 1 compliance specialist and Gmail Address 1 relating to the Bank 1 Applications.  The initial e-mail communication from Gmail Address 1 to the compliance specialist attaches a March 2020 bank statement from Credit Union 1 for a personal account in JOHNSON's name, at his parents' address in Buffalo, New York.[1]  The compliance specialist replied to ask if JOHNSON had a "Bank statement for the business."  JOHNSON replied: "not for 2020 I temporarily closed my business account because of covid-19 made my business go down significantly."  In a follow-up e-mail, JOHNSON stated that he has "2019 statements from the business."  The compliance specialist replied that he was checking with his supervisor, and later that day wrote back with additional questions: "First of all, we need to know whether the business was still in operation on Feb 15, 2020.  Then we need to know if this money is to be used to pay

---

[1] The face of the document states "This statement is being audited by our Supervisory Committee."

your employees." JOHNSON responded, "Yes the business was operating until 3/16/20. I am still paying employees from my personal savings money but I am running out. Please let me know."

33.     Continuing in a separate string of e-mails on or about May 1, 2020, JOHNSON stated that JOHNSON could provide an employee log to Bank 1. The Bank 1 compliance specialist replied, "If you have an employee log for Feb or March that would be great. . . . Next step we need you to do is open a new or re-open your business account and send us a voided check from that account. That will give us an account to deposit the money into." JOHNSON sent the compliance specialist (in separate e-mails) purported payroll logs for Million Man for January and February 2020. Each log lists 29 employees along with JOHNSON, representing that each employee worked from exactly 6:00 a.m. to 4:00 p.m. on each business day during the period and was paid exactly $48 per hour. Each log shows a monthly total payroll of $278,400. Both the number of employees and monthly payroll figures in this purported payroll documentation are substantially different from the figures provided in the Bank 1 Applications.

34.     Later in the afternoon of May 1, 2020, JOHNSON wrote to the Bank 1 compliance specialist that the "account for my business will be open on Monday but is it possible if I can open an account with you guys? Would that be better[?]" On the following Monday, May 4, 2020, JOHNSON again wrote to the compliance specialist, "Do you want me to come into the branch to make my business account or no . . . Please let me know if you need any information to open it[.]" That same day, the user associated with to Gmail Address 1, who I believe to be JOHNSON, ran the following Google searches: (i) "w3 form";(ii) "941 form";  (iii) How to Fill out IRS Form 941: Simple Step-by-Step Instructions; and (iv) "how to fill out 940 form[.]"

35.     On or about May 5, 2020, the compliance specialist informed JOHNSON that "after further review of [the applicant's] documentation" the bank was declining the PPP loan.

36.     Approximately two days after JOHNSON learned that Bank 1 had declined Million Man's PPP loan, the Gmail Address 1 user visited the following websites:

    a.  CNBC: "Coronavirus fraud: Two New England men are first to be charged with scamming small business loan program" (https://www.cnbc.com/amp/2020/05/05/coronavirus-men-charged-with-fraud-over-cares-act-ppp-small-business-aid.html); and

    b.  "Two Men Charged In First US Case Of PPP Fraud" (https://www.pymnts.com/news/security-and-risk/2020/two-men-charged-in-first-us-case-of-ppp-stimulus-fraud/amp/).

### *Million Man PPP Loan Application to Bank 2*

37.     Bank 2 records show that Bank 2 received an SBA Form 2483 submitted on or about May 10, 2020 (the "Bank 2 Application") for Million Man, with JOHNSON listed as the owner on the signature page.  Based on information received from Bank 2, the Bank 2 Application was submitted directly through Bank 2's website.  The Bank 2 Application identified JOHNSON as the "Primary Contact" for Million Man, and listed a contact telephone number and Google email address ("Gmail Address 2").[2]

38.     A review of service provider records shows that Gmail Address 2 was accessed from an IP address assigned to the JOHNSON Residence on or about May 4, 2020, six days before the Bank 2 Application, listing Gmail Address 2, was submitted.

---

[2] Based on information provided by Bank 2, at the time the Bank 2 Application was submitted, applicants provided an online attestation to the information contained in applications, and no signature (electronic or otherwise) was captured on the SBA Form 2483 document itself.  Due to a technical issue affecting Bank 2's website, no time stamp or IP information was captured in connection with the attestation for or submission of the Bank 2 Application.

39.     The Bank 2 Application sought a PPP loan in the amount of $374,625.  To support a PPP loan in the amount of $374,625, the Bank 2 Application represented that Million Man has an average monthly payroll of $149,850 and 54 employees.

40.     According to records provided by Bank 2, the applicant submitted the same "Articles of Organization" documentation and online filing receipt (dated on or about May 21, 2019) described above in Paragraph 26.  The applicant also submitted a color photocopy of the front of the same New York identification card for JOHNSON described in Paragraph 26.[3]  The files provided by Bank 2 include an IRS notice letter dated on or about June 18, 2019, and addressed to Million Man and JOHNSON, assigning an EIN to the company.

41.     In addition, Bank 2 received IRS Form 941 documentation for Million Man (listing the company's EIN) for all four quarters in 2019.  The first-quarter Form 941 lists 39 employees and $404,485.59 in employee wages.  The second-quarter Form 941 lists 39 employees and $378,937.49 in employee wages.  The third-quarter Form 941 lists 54 employees and $453,987.77 in employee wages.  The fourth-quarter Form 941 lists 54 employees and $403,753.40 in employee wages.  The applicant also submitted IRS Form 940 documentation for Million Man (listing the company's EIN) for 2019.  The Form 940 is dated January 13, 2020, and shows total payments to all employees of $1,641,164.25, which is the sum of the wage payments shown in each of the four IRS Form 941s described above.  The signature boxes in the IRS Form 940 and 941 documentation submitted to Bank 2 contain handwritten signatures that appear beside the printed name "Christian Johnson."

---

[3] The photocopy is split across two pages of a PDF file, but the content and information match the photocopied ID described in Paragraph 26.

### *Communications Between Bank 2 Employees and JOHNSON*

42.     Interviews with Bank 2 employees revealed that a Bank 2 manager separately spoke to JOHNSON by telephone regarding the Bank 2 Application.  The Bank 2 documentation specialist initially called JOHNSON at a number that JOHNSON provided by e-mail and also received calls from JOHNSON at another telephone number.  The calls became repetitive, with the Bank 2 documentation specialist discussing additional supporting documentation that was required, and JOHNSON repeatedly stating that JOHNSON was having difficulty paying his employees.  The Bank 2 manager used the telephone number provided on the Bank 2 Application to contact JOHNSON, and JOHNSON also returned calls from a different number.  The Bank 2 manager raised additional concerns on the calls regarding purported payroll documents for Million Man.  On their final call, JOHNSON hung up on the Bank 2 manager.

43.     Additional May 2020 e-mail exchanges obtained from Bank 2, between Bank 2 employees and Gmail Address 2 relating to the Bank 2 Application, further corroborate that JOHNSON used Gmail Address 2 to communicate with Bank 2, and that JOHNSON was the individual who submitted false and fraudulent documentation in connection with the Million Man PPP Loan Application to Bank 2.  In the e-mail headers for all communications, the name field for Gmail Address 2 is populated as "christian Johnson."  Among other documentation provided through the May 2020 email correspondence, JOHNSON attached to e-mails and submitted the purported IRS Form 940 documentation, described above in Paragraph 27, and the purported February 2020 payroll log for Million Man, described above in Paragraph 33.  Based on documents and information provided by Bank 2, due to inconsistencies in the purported payroll documentation and other supporting documents provided by JOHNSON, the bank declined the PPP loan on or around May 21, 2020.

***Million Man PPP Loan Applications to***
***Financial Services Companies 1 and 2***

44.     A review of the search warrant returns from Gmail Address 2 revealed e-mail communications containing confirmations of submitted PPP loan application documents to Financial Services Company 1 and Financial Services Company 2.  These applications contained time stamps and IP addresses connecting Gmail Address 2 to the JOHNSON Residence.

45.     Specifically, a May 5, 2020 e-mail from Financial Services Company 1 to Gmail Address 2 attached a PPP loan application submitted by Million Man to Financial Services Company 1.  The loan application sought $300,000 in PPP loans and falsely stated that Million Man had 54 employees and $278,000 in average monthly payroll.

46.     Additionally, another May 5, 2020 e-mail from a document processing company (working on behalf of Financial Services Company 2) to Gmail Address 2 attached a PPP loan application submitted by Million Man to Financial Services Company 2.  This loan application sought $690,000 in PPP loans and repeated the false payroll and employee information included in the loan application to Financial Services Company 1.

***Million Man PPP Loan Application to Lender 1***

47.     Lender 1 received an SBA Form 2483 submitted on or about May 24, 2020 (the "Lender 1 Application") bearing the electronic signature of JOHNSON and seeking a PPP loan for Million Man.

48.     The Lender 1 Application sought a PPP loan in the amount of $695,000.  To support a PPP loan in the amount of $695,000, the Lender 1 Application represented that Million Man has an average monthly payroll of $278,000 and 54 employees.

49.     The Lender 1 Application listed Gmail Address 1 as the e-mail address for the "Primary Contact," JOHNSON.  Service provider records show that, at or around the time that the

14

Lender 1 Application was submitted, the IP address being utilized by Gmail Account 1 was associated with the JOHNSON Residence.[4] The Lender 1 Application included the same contact telephone number (with JOHNSON's father as the subscriber). The contact information included in the Lender 1 Application was the same contact information included in the Bank 1 Applications.

50.     According to records provided by Lender 1, JOHNSON submitted a voided check from Bank 3's Buffalo branch office listing Million Man's address and purportedly connected to a Million Man account maintained at Bank 3. The applicant also submitted a color photocopy of the front of the same New York identification card for JOHNSON described in Paragraphs 26 and 41. The New York identification card in the photocopies submitted to Lender 1 matches the information, ID photograph, and other records for JOHNSON currently on file with the New York Department of Motor Vehicles, indicating that the applicant possessed JOHNSON's real state-issued ID.

51.     As part of the Lender 1 Application, JOHNSON submitted a purported completed IRS Form 941, Employer's Quarterly Federal Tax Return documentation for Million Man (listing the company's EIN) for the first quarter of 2020. The first-quarter Form 941 lists 57 employees and $544,897.93 in employee wages. The signature box in the IRS Form 941 documentation contains "Christian Johnson" in typeface (*i.e.*, it does not contain handwritten signatures); it is dated April 3, 2020.

52.     For the reasons described above, Million Man's representations in Lender 1 Application regarding the wage and employee numbers are false. As described in Paragraph 29 above, according to DOL-OIG, New York State records show that there is no reported wage data

---

[4] This IP address information was captured on or about May 27, 2020.

for Million Man for the first quarter of 2020. This is further evidence that the IRS Form 941 documentation submitted with the Lender 1 Application is fraudulent.

### Email Communications Between Lender 1 and JOHNSON

53.     Service provider records show that Lender 1 provided Gmail Address 1 with updates about the status of Million Man's Lender 1 Application. On or around July 2, 2020, Lender 1 informed JOHNSON at Gmail Address 1 that he had received preliminary approval from SBA for a PPP loan.

54.     Then, on or about July 23, 2020, Lender 1 sent a follow-up e-mail to JOHNSON at Gmail Address 1 stating that upon further review of supporting documentation, Million Man's Lender 1 Application would be declined. I have confirmed with Lender 1 that the loan was never disbursed to Million Man.

### Additional Million Man PPP Applications Obtained
### from Financial Services Company 3

55.     Financial Services Company 3 received additional PPP loan applications for Million Man, including an SBA Form 2483 dated May 25, 2020, and an SBA Form 2483 dated May 27, 2020 (the "FSC3 Applications"), each bearing JOHNSON's electronic signature. The FSC3 Applications identified JOHNSON as the "Primary Contact" for Million Man and listed a contact Gmail address ("Gmail Address 3"). On or about May 25, 2020, Gmail Address 3 utilized an IP address that had been previously been associated with the JOHNSON Residence (as recently as on or about May 5, 2020).

56.     The FSC3 Applications sought a PPP loan in the amount of $695,000. To support a PPP loan in the amount of $695,000, the FSC3 Applications represented that Million Man has an average monthly payroll of $278,000 and 54 employees. Financial Services Company 3 also provided e-mail correspondence sent by Financial Services Company 3 to Gmail Address 3.

This correspondence included an email sent on or about May 25, 2020, with the heading "Thanks for submitting your loan application!" and stating that the application had been received and registered with Financial Services Company 3. On or about May 26, 2020, Financial Services Company 3 sent another e-mail to Gmail Address 3 stating "We've Submitted Your PPP Application To A Lender."

57.     That same day, on or about May 26, 2020, the user connected to Gmail Address 1 queried Google with the following search: "all ppp loans will be audited[.]"

58.     On or about May 27, 2020, a Financial Services Company 3 funding manager wrote to Gmail Address 3, stating that IRS documentation submitted with the loan application indicated that Million Man would only qualify for a loan of $341,909 instead of the $695,000 that had been requested. At the bottom of this correspondence is a line indicating that the e-mail had been "Read" (in green text) by the Gmail Address 3 user.

59.     On or about June 1, 2020, the user associated with Gmail Address 1 visited a website hosted by Bank 3 entitled "How To Avoid PPP Business Fraud Schemes[.]"

60.     On or about June 3, 2020, the Financial Services Company 3 funding manager sent another e-mail to Gmail Address 3 containing the same text as the May 27, 2020 e-mail. A line at the bottom of the June 3, 2020 e-mail similarly indicates that the e-mail had been "Read" by the Gmail Address 3 user.

61.     On or about June 5, 2020, the user associated with Gmail Address 1 conducted the following Google search: "private jet for sale[.]" On or about June 6, 2020, that same user conducted following Google search: "lamborghini aventador for lease[.]"

17

## **CONCLUSION**

62.     As reviewed above, the evidence shows that JOHNSON submitted multiple materially false and fraudulent PPP loan applications to federally insured financial institutions in a scheme to illegally obtain PPP funds.  In furtherance of the scheme, JOHNSON transmitted fraudulent supporting documentation (including fraudulent IRS forms) and made multiple false statements (including about the purported use of requested PPP funds to pay employees) in e-mail and telephonic communications to lenders, i.e., via interstate wires.

63.     Based on the foregoing, I submit that there is probable cause to believe that, between in or around April 2020 and May 2020, in the Western District of New York and elsewhere, JOHNSON committed the crimes identified in Paragraphs 1.a. through 1.c.  Therefore, I request that a criminal complaint be issued, along with a warrant for JOHNSON's arrest.

## REQUEST FOR SEALING

64.    I further request that the Court order that all papers in support of this complaint, including the affidavit and arrest warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is not public.  Although the target of the investigation likely is aware generally of the investigation, he does not know any details of the investigation or investigative steps being undertaken to obtain documents and information relating to the PPP loan applications at issue.  Accordingly, there is good cause to seal these documents because their premature disclosure may increase the likelihood that the target flees/continues flight from prosecution, destroys or tampers with physical or electronic evidence, changes patterns of behavior, notifies confederates, or otherwise seriously jeopardizes the investigation.

Respectfully submitted,

Jeff G. Thomson
Special Agent
FDIC Office of Inspector General

Sworn to telephonically
January 29, 2021.

HONORABLE JEREMIAH J. McCARTHY
UNITED STATES MAGISTRATE JUDGE

19